UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KIRILL MEDVEDEV**<br><br>Plaintiff,<br><br>v.<br><br>**BINANCE HOLDINGS LIMITED,<br>BAM TRADING SERVICES INC.**<br><br>Defendants. | Index No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF ACTION

1. Plaintiff Kirill Medvedev brings this action against Defendants Binance Holdings Limited and BAM Trading Services Inc. for conversion and unjust enrichment.

2. Plaintiff is an individual who holds a Binance account associated with the email address invest@tenzor.capital, which was blocked and subsequently emptied by Binance.

3. Defendant Binance Holdings Limited ("**Binance**"), is a company engaged in the business of operating a crypto exchange and cryptocurrency trading outside of the United States.

4. Defendant BAM Trading Services Inc. ("**Binance.US**"), is a company engaged in the business of operating a crypto exchange and cryptocurrency trading within the United States.

5. Plaintiff now brings this action to obtain legal and equitable relief for Defendants' unlawful withholding and conversion of Plaintiff's funds.

## PARTIES

6. Kirill Medvedev is an individual residing at 2301 Laguna Cir, North Miami, FL 33181, USA.

7. Defendant BAM Trading Services Inc. is a Delaware company with its registered office address at 252 NW 29th Street, Suite 905, Miami, FL 33127. It is wholly owned by BAM Management U.S. Holdings Inc., which is 81 percent owned by the founder of Binance, Changpeng Zhao. *See SEC v. Binance*, Case No. 1:23-cv-01599 (D.D.C.), D.E. 1, Compl. (June 5, 2023) ("**SEC Compl.**") ¶¶ 28-29. Today, Binance.US is available in 46 U.S. states, and 8 U.S. territories; is one of the top five crypto asset trading platforms in the United States by trading volume; and as of April 1, 2023, Binance.US's average 24-hour trading volume was valued at over $282 million. *See Id.* ¶210.

8. Defendant Binance Holdings Limited is a Cayman Islands company with its registered office address at Governors Square, 23 Lime Tree Bay Avenue, P.O. Box 30746, Cayman Islands. Although Binance is supposed to exclusively work with the customers outside of the United States, according to the U.S. Commodities Futures Trading Commission in its recently-filed complaint against Binance and related entities ("**CFTC Complaint**"), much of Binance's reported trading volume, and its profitability, has come from its extensive solicitation of and access to customers located in the United States. *See CFTC v. Zhao et al.*, Civil Action No.: 1:23-cv-01887 (N.D. Ill. Mar. 27, 2023), D.E. 1.

9. At all relevant times, and in connection with the matters alleged herein, each Defendant acted as an agent, servant, partner, joint venturer, and/or alter ego of the other, and acted in the course and scope of such agency, partnership, and relationship and/or in furtherance of such joint venture. Each Defendant acted with the knowledge and consent of the other Defendant and/or directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the other Defendants as described herein. Recognition of the privilege of separate existence under such circumstances would promote injustice.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction in this action through diversity of the parties under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11. In addition, the Court has specific personal jurisdiction over both Defendants because they: (i) transact business in New York; (ii) have substantial aggregate contacts with New York; (iii) engaged in and are engaging in conduct that has and had a direct, substantial, and reasonably foreseeable, and intended effect of causing injury to persons in New York; and (iv) purposely availed themselves of the laws of New York. This Court also has specific personal jurisdiction over Binance for the additional reason that it asserts substantial control over Binance.US, as described below.

12. According to the CFTC Complaint, "Binance personnel, including [Changpeng Zhao], have dictated [Binance.US's] corporate strategy, launch, and early operations. At [Changpeng Zhao's] direction, [Binance.US's] marketing and branding has mirrored that of Binance.com. [Binance.US] has licensed Binance's trademarks to advertise in the United States. [Binance.US] has also relied on one of Binance's matching engines through a software licensing agreement." *See CFTC Compl.* ¶ 81.

13. Exercising jurisdiction over Defendants in this forum is reasonable and comports with fair play and substantial justice.

14. Venue for this action is proper in this district pursuant to 28 U.S.C. §1391, because Binance as a foreign entity may be sued in any judicial district.

# FACTS

I. **Account Blocking**

15. In approximately May 2019, Medvedev opened an account with Binance ("**Account**"). He used the Account for cryptocurrency trading. Throughout his usage of the Account, he adhered to all applicable rules without any violations.

16. Between September 2021 and March 2022, Medvedev entered multiple agreements for the purchase of 58 bitcoins valued at over $2,378,000.00 as of March 2022. Medvedev funded his Account using these bitcoins. From that time and up to March 2023, Medvedev was using purchased bitcoins for trading as a source of profits.

17. On or about March 17, 2023, Binance abruptly denied Medvedev access to his Account with no prior notice or sufficient explanation. As a result of his Account being blocked, Medvedev was unable to place or cancel trades, make withdrawals or deposits, or monitor and control his open futures trades valued at approximately $1,100,000.00, made up of multiple cryptocurrencies and futures positions.[1] Additionally, being unable to withdraw his money, Medvedev cannot pay for ongoing living expenses.

18. When Medvedev reached out to Binance customer support, he was informed that his Account had been blocked due to an internal review. After days of communication, Medvedev was told by Binance to contact an "officer in charge of this case" at a court in Madrid, Spain. Binance also stated there were no open futures positions on Medvedev's Account, implying that they had likely been closed by Binance.

---

[1] A futures position in cryptocurrency refers to a financial contract in which an investor agrees to buy or sell a specified quantity of a cryptocurrency asset at a predetermined price on a future date. This contractual agreement allows investors to speculate on the future price movements of the cryptocurrency, with the expectation of profiting from price changes.

## II. Demand Letter

19. After multiple unsuccessful attempts to resolve the issue of denied access to Medvedev's account, Medvedev engaged the undersigned attorneys to represent him and send a demand letter to Binance. *See* Demand Letter dated May 26, 2023, attached as **Exhibit A**.

20. Plaintiff's attorneys have made numerous efforts to send the demand letter to various emails associated with Binance. However, Binance hides its contact emails on its website, making it challenging to establish direct communication. Despite persistent efforts, Plaintiff's attorneys have yet to receive a direct response from Binance. Plaintiff's attorneys have only received sample reply texts and auto-replies, along with access to a form for law enforcement representatives, even though this is not applicable to the current situation.

## III. Spain Investigation

21. Because Binance did not provide sufficient information, Medvedev was forced to hire Across Legal SLP, a Spanish law firm ("**Across Legal**") and incur substantial legal fees to gain access to the court documents.

22. Across Legal was able to ascertain that Medvedev's Account had been frozen due to an ongoing criminal proceeding in Spain, specifically in the Juzgado Central de Instrucción No. 6 of the Audiencia Nacional, identified by proceeding number DPA 78/2020 ("**Proceeding**"). Across Legal and its lawyers intervened in the Proceeding on behalf of Medvedev.

23. The Proceeding revolves around a failed Initial Coin Offering ("**ICO**") launched by Nimbus Platform about five years ago, which is currently the subject of the previously mentioned criminal investigation in Spain.

24. Across Legal represented Medvedev in the Proceeding and obtained access to the case files. However, Across Legal did not find any order directly authorizing Binance to freeze Medvedev's account.

25. Medvedev's only connection to the Proceeding is the fact that the bitcoins in his Account at one point belonged to Nimbus Platform. Nevertheless, Medvedev had purchased these bitcoins in good faith years after the Nimbus Platform ICO, as stated above.

26. When Across Legal inquired with Binance about the Proceeding, Binance responded, "[t]here is a binding Court Order ordering [Binance] to block [Medvedev's]'s account. Unfortunately, Binance is not at liberty to disclose such order…" Following this response, Binance did not provide further clarifications.

27. In sum, Binance blocked Medvedev's Account, citing an order that cannot be found in the court records and was not provided to Across Legal by Binance.

28. On August 3, 2023, Medvedev was able to log into his Account, only to discover that substantially all of his funds had disappeared, leaving only around $90. Given that neither Across Legal nor Medvedev received any notification from Binance or the Spanish Court, Medvedev's funds were illegally taken by Binance without any prior notice or valid justification.

29. It is currently unclear who possesses the funds that were transferred out of Medvedev's Account.

30. As a result of Defendants' unjustified actions, Medvedev has suffered financial losses, including but not limited to the full amount that was transferred by Binance from the Account and damages incurred due to the inability to manage his funds and derive profits.

## COUNT I
## CONVERSION
## New York law

31. To establish a claim for conversion a plaintiff must show (1) legal ownership or an immediate right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's right. *Giardini v Settanni*, No. 2016-09712, 9429/15, 70 N.Y.S.3d 57, 58, 2018 N.Y. Slip Op. 01904, 2018 WL 1404138 (N.Y.A.D. 2 Dept., Mar. 21, 2018).

32. Medvedev legally purchased his assets and has full legal ownership of them. Defendants illegally exercised unauthorized dominion over Medvedev's assets from the Account in the amount of approximately $1,100,000.00.

## COUNT II
## UNJUST ENRICHMENT
## New York law

33. The elements of an unjust enrichment claim are, "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y. 3d 173, 182 (2011).

34. Both Defendants, especially Binance, unjustly enriched themselves at the expense of Medvedev by withholding his funds and failing to provide clarification or refund his assets.

35. Despite Medvedev's good faith efforts to obtain any clarification or guidance, Binance has ignored his requests and failed to make any attempt to amicably rectify the issue.

36. It is against equity and good conscience to permit Defendants to retain the funds.

## **REQUEST FOR RELIEF**

Plaintiff requests that this Court issue an order holding Defendants jointly and severally liable to Plaintiff for damages, including enhanced and punitive damages, attorney's fees, and costs, and such other relief as the Court may deem just.

Date: September 22, 2023     By: _/s/ KPaw_